# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMISSION | § § § | |
| v. | § § | CIVIL ACTION NO. 3:22-CV-1415-S |
| MICHAEL BOWEN and CHOL KIM a/k/a BRANDON KIM | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Michael Bowen's Partial Motion to Dismiss ("Motion") [ECF No. 15]. The Court has considered the Motion, Bowen's Brief in Support of His Partial Motion to Dismiss ("Bowen's Brief") [ECF No. 16], Plaintiff Securities and Exchange Commission's ("SEC") Response to Defendant's Partial Motion to Dismiss ("Response") [ECF No. 19], Bowen's Reply in Support of His Partial Motion to Dismiss [ECF No. 20], and the applicable law. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

This is a securities fraud and unregistered sales of securities case brought by the SEC against Defendants William Glen Baker, Bowen, Cannon Operating Company LLC, North Texas Minerals LLC, and Chol Kim a/k/a Brandon Kim.[1] In the Complaint, the SEC alleges that Baker, Bowen, and Cannon raised approximately $2,182,687 from at least 140 investors between January 2018 and September 2020 through the fraudulent and unregistered offer and sale of securities. Compl. [ECF No. 1] ¶ 1. The securities at issue are four offerings of working interests

---

[1] Plaintiff voluntarily dismissed Cannon and North Texas Minerals. *See* ECF No. 24. The Court entered an agreed Final Judgment as to Baker. *See* ECF No. 32. And the Clerk entered default against Kim. *See* ECF No. 29. Bowen is the only remaining Defendant who has made an appearance in this case.

in Oklahoma oil and gas wells. *Id.* Bowen was the Chief Operating Officer and sales manager of Cannon until his departure in September 2018. *Id.* ¶ 9.

In January 2018, Cannon and Baker began raising money for the four well offerings: Mustang 2, Shawnee 1, Shawnee 3, and Shawnee 5. *Id.* ¶ 14. Cannon's salespeople solicited prospective investors for the Mustang 2 and Shawnee 5 projects, which were new wells to be drilled in the Shawnee Field, where Cannon already operated several wells. *Id.* ¶¶ 14, 16. Baker and Bowen, both officers of Cannon, also directly solicited investors. *Id.* ¶ 17. The salespeople, Baker, and Bowen all received commissions when they successfully closed a sale. *Id.* ¶ 40. Bowen determined the commission amount for each sale. *Id.* ¶ 41. Neither the salespeople nor Baker and Bowen were registered as brokers. *Id.* ¶ 40.

The Mustang 2 offering began in April 2018. *Id.* ¶ 23. Baker and Bowen allegedly prepared the written offering materials for Mustang 2, "with Baker drafting and Bowen reviewing and editing them." *Id.* ¶ 19. The materials included a Private Placement Memorandum and a marketing brochure called the "Prospect Book" (collectively, "Mustang 2 Offering Materials"). *Id.* Bowen and others sent the Mustang 2 Offering Materials to prospective investors. *Id.* The SEC alleges that the Mustang 2 Offering Materials were misleading. Specifically, the SEC claims that the Prospect Book "contained misleading information about the actual production of oil and gas from three of Cannon's prior wells," which were in the same field as the Mustang 2 well's proposed location. *Id.* ¶ 22. The Prospect Book claimed that the prior wells "continued to produce at massive rates"; however, the SEC claims that actual production had declined dramatically and that the wells had been offline in March and April 2018. *Id.* ¶¶ 22-23.

The SEC also alleges that Cannon's, Baker's, and Bowen's subsequent actions did not comport with the statements made in the Mustang 2 Offering Materials. The Private Placement

Memorandum promised investors that proceeds would be deposited into a segregated bank account, but Baker never opened a separate account and instead deposited investor funds into Cannon's general operating account. *Id.* ¶ 24. Further, the Private Placement Memorandum stated that Cannon would use 85% of investor funds for "Program Costs" and 15% for a "Management Fee," but Cannon did not spend investor funds as promised. *Id.* ¶¶ 25-26. Cannon's offering, overhead, and management expenses allegedly "vastly exceeded" the 15% limit. *Id.* ¶ 26. And Bowen allegedly misused investor funds by using them to pay commissions to salespeople, even though commissions were not authorized or disclosed to investors and exceeded the cap on offering, overhead, and management expenses. *Id.* ¶ 28.

The SEC further alleges that the Mustang 2 Offering Materials omitted material information, which Bowen knew or should have known because he reviewed, edited, and helped prepare the documents. *Id.* ¶¶ 19, 30-31. First, the Mustang 2 Offering Materials did not mention Bowen or name him as Cannon's Chief Operating Officer. *Id.* ¶ 31. The SEC claims that "[t]his omission was designed to prevent investors from learning about Bowen's prior securities violations." *Id.* In 2018 and 2019, the SEC sanctioned Bowen for selling securities in unregistered offerings and for selling securities without being registered as a broker. *Id.* ¶ 9. The SEC issued an order barring Bowen from selling securities on March 18, 2018. *Id.* ¶ 42. According to the SEC, from March 18, 2018, to September 2018, Bowen solicited investors for Cannon in violation of this order. *Id.* Second, the Mustang 2 Offering Materials failed to disclose negative information about Cannon and Baker.[2] *Id.* ¶ 32. Third, the Mustang 2 Offering Materials did not disclose the payment of sales commissions. *Id.* ¶ 33. Bowen left Cannon in September 2018. *Id.* ¶ 9. Ultimately, Cannon never drilled the Mustang 2 well. *Id.* ¶ 37.

---

[2] The SEC does not attempt to tie the omission of negative information about Cannon and Baker to Bowen; therefore, the Court does not analyze this omission below.

Based on the foregoing allegations, the SEC asserts four claims against Bowen. First, the SEC alleges that Bowen and others violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, by engaging in fraud in connection with the purchase or sale of securities. Compl. ¶¶ 48-51. Second, the SEC alleges that Bowen and others violated Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), by engaging in fraud in the offer or sale of securities. Compl. ¶¶ 52-55. Third, the SEC alleges that Bowen and others violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c), by engaging in the unregistered offer and sale of securities. Compl. ¶¶ 56-58. Fourth, the SEC alleges that Bowen and others violated Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), by offering and selling securities as unregistered brokers. Compl. ¶¶ 59-61. Bowen moves to dismiss only the two fraud claims. Bowen's Br. 2 n.1.

## II. LEGAL STANDARD

### *A. Rule 12(b)(6)*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)

4

(citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, the Court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the Court does not evaluate the plaintiff's likelihood of success; rather, it only determines whether the plaintiff has stated a claim upon which relief can be granted. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### B. Rule 9(b)

The two claims Bowen moves to dismiss are fraud claims, which are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). "Put simply, Rule 9(b)

requires 'the who, what, when, where, and how'" of the fraud. *Id.* (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

## III. ANALYSIS

Section 10(b) and Rule 10b-5 of the Exchange Act and Section 17(a) of the Securities Act make it unlawful to "employ any device, scheme, or artifice to defraud"; make any untrue statement of a material fact or omit "a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading" (or, for purposes of Section 17(a)(2), to obtain money or property by means of any such misstatement or omission); or engage in any act, transaction, practice, or course of business that "operates or would operate as a fraud or deceit." 15 U.S.C. § 77q(a); 17 C.F.R. § 240.10b-5.

Here, the SEC alleges that Bowen's fraud falls into three general categories: (1) failing to correct misstatements and omissions in the Mustang 2 Offering Materials; (2) distributing the misleading materials to investors; and (3) misusing investor funds by paying sales commissions. Resp. 2, 7. Although neither party clearly delineates which conduct allegedly violates which statutory provisions, the SEC generally alleges that Bowen made and/or used material misrepresentations and omissions in violation of Rule 10b-5(b) and Section 17(a)(2) and participated in a fraudulent scheme in violation of Rule 10b-5(a), Rule 10b-5(c), Section 17(a)(1), and Section 17(a)(3). The Court will analyze each claim in turn.

### A. Rule 10b-5(b) and Section 17(a)(2)

To state a claim under Section 10(b) and Rule 10b-5(b), the SEC must allege that Bowen: (1) made a material misrepresentation or omission; (2) in connection with the purchase or sale of

securities; and (3) acted with scienter.[3] *S.E.C. v. Hopper*, No. H-04-1054, 2006 WL 778640, at *9 (S.D. Tex. Mar. 24, 2006) (citing, among other sources, *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999)); *see also S.E.C. v. Reynolds*, No. 3-08-CV-0384-B, 2008 WL 3850550, at *4 (N.D. Tex. Aug. 19, 2008) (citations omitted) (same). Section 17(a)(2), by comparison, prohibits, in the offer or sale of securities,[4] obtaining money "by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77q(a)(2). Though the rule and the statute are similar, there are two key differences. First, Section 17(a)(2) does not include the word "make." *Compare* 17 C.F.R. § 240.10b-5(b) (making it unlawful "*[t]o make* any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading" (emphasis added)) *with* 15 U.S.C. § 77q(a)(2) (prohibiting "obtain[ing] money or property *by means of* any untrue statement . . . or any omission" (emphasis added)). Second, "[s]cienter is not an element of a § 17(a)(2) . . . cause of action." *Meadows v. S.E.C.*, 119 F.3d 1219, 1226 n.15 (5th Cir. 1997) (citation omitted). "To show that a defendant has violated § 17(a)(2) . . ., the [SEC] need only show that the defendant acted with negligence." *S.E.C. v. Seghers*, 298 F. App'x 319, 327 (5th Cir. 2008) (citation omitted).

The Court turns first to the question of whether the SEC has adequately tied Bowen to the alleged misstatements and omissions for purposes of Rule 10b-5(b) and Section 17(a)(2) liability. Next, the Court analyzes whether the SEC has plausibly alleged material misstatements or

---

[3] Bowen does not challenge whether the alleged statements were made in connection with the purchase or sale of securities. Therefore, the Court will not consider this element.

[4] Bowen does not challenge whether alleged statements were made in the offer or sale of securities. Therefore, the Court will not consider this element.

omissions. Finally, the Court considers whether the SEC has adequately pleaded scienter for purposes of its Rule 10b-5(b) claim and negligence for purposes of its Section 17(a)(2) claim.

### i. Made or Used a Misrepresentation or Omission

The Court first examines whether the SEC has adequately tied Bowen to the challenged misstatements and omissions in the Mustang 2 Offering Materials. Though the SEC concedes that Baker drafted the Mustang 2 Offering Materials, the SEC claims that Bowen "review[ed] and edit[ed]" and "helped prepare" the materials. *See* Compl. ¶¶ 19, 31. Bowen argues that "neither statute nor precedent imposes fraud liability on an employee because he reviewed and edited a company document," Bowen's Br. 1, and that "there is no allegation that Bowen . . . had any control over . . . the contents of the Mustang 2 [Offering Materials]." Reply 6. Without citing any case law in support of its position, the SEC responds that "[t]he allegations in this case that Bowen prepared, reviewed, and edited the [Mustang 2 Offering Materials] . . . connect[] Bowen's actions to the fraud." Resp. 7.

### a. Rule 10b-5(b)

The Supreme Court has held that "[t]o be held liable for a misstatement or omission under Section 10(b) and Rule 10b-5, the defendant must be the 'maker' of the statement, *i.e.*, 'the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.'" *In re SolarWinds Corp. Sec. Litig.*, 595 F. Supp. 3d 573, 586 (W.D. Tex. 2022) (quoting *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011)). However, courts are split regarding whether *Janus* applies to enforcement actions brought by the SEC. *See, e.g.*, *Lorenzo v. S.E.C.*, 139 S. Ct. 1094, 1100 (2019) (assuming without deciding that the defendant "was not a 'maker' under subsection (b) of Rule 10b-5" where the defendant was involved in drafting but the defendant's boss had "ultimate authority" over the content, form, and

8

communication of the challenged statement); *U.S. S.E.C. v. Benger*, 931 F. Supp. 2d 908, 911 n.1, 912-13 (N.D. Ill. 2013) (citing cases on both sides of the split and cases in which the SEC conceded that *Janus* applied); *S.E.C. v. Killion*, No. H-16-621, 2017 WL 7052310, at *6 (S.D. Tex. Mar. 24, 2017) (applying *Janus* and stating that an executive may be held accountable if he had ultimate authority over the statement, signed the statement, or ratified and approved the statement, or if the statement is attributed to him (citation omitted)). For the reasons stated below, the Court finds that the SEC has not adequately pleaded its claim regardless of whether *Janus* applies to this action; therefore, the Court need not decide the issue at this time. Because the Court grants the SEC leave to amend its Complaint, as discussed below, the parties may address the applicability of *Janus* in briefing on any future dispositive motions.

Even if *Janus* does not apply, the Court concludes that the SEC has not plausibly alleged that Bowen "made" the challenged statements under any definition of the term. "Mere knowledge of another's violation of § 10(b), or even aiding and abetting a violation, is not enough to establish [primary] liability under the Exchange Act." *S.E.C. v. Felton*, No. 3:20-CV-0822-G, 2020 WL 7056333, at *6 (N.D. Tex. Dec. 2, 2020) (internal quotation marks and citation omitted). To establish primary liability, vague allegations that a defendant reviewed and edited a document, without more, are insufficient. *See, e.g.*, *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 WL 2450508, at *8 (D. Ariz. Aug. 11, 2009) ("[W]hile the Complaint does allege that Fraser had some level of involvement in reviewing and discussing the Forms 10-K, there are no allegations of the nature of those reviews and discussions, that Fraser suggested what the forms should state, or that any such suggestion, if it occurred, was heeded."); *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 922 (N.D. Cal. 2008) ("The SEC's conclusory pleadings that Ms. Berry 'reviewed' and 'discussed' various

filings is insufficient to plead (with particularity) Ms. Berry's role in the purported fraud.").
Therefore, the SEC has failed to state a claim for a violation of Rule 10b-5(b).

### b. Section 17(a)(2)

The Court's conclusion that Bowen was not the maker of the statements at issue for purposes of Rule 10b-5(b) liability does not necessarily preclude Section 17(a)(2) liability. As noted above, Section 17(a)(2) does not include the key term "make." *See* 15 U.S.C. § 77q(a)(2). Many courts applying *Janus* to SEC enforcement actions have highlighted this distinction, concluding that "*Janus*'s definition of 'maker' does not extend to claims under Section 17(a)(2)." *S.E.C. v. Farmer*, No. 4:14-CV-2345, 2015 WL 5838867, at *7 (S.D. Tex. Oct. 7, 2015) (collecting cases), *appeal dismissed*, No. 15-20620 (5th Cir. Feb. 25, 2016); *see also U.S. S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015) ("[T]he [Supreme] Court's definition of 'to make' in Rule 10b-5 does not apply to § 17(a)(2)."). *Cf. Lorenzo v. S.E.C.*, 872 F.3d 578, 589 (D.C. Cir. 2017), *aff'd*, 139 S. Ct. 1094 ("Indeed, 'to make any statement' was the critical language construed in *Janus*: what the Court described as the 'phrase at issue.'" (cleaned up)).

Because "obtaining money by means of any untrue statement" in violation of Section 17(a)(2) "encompasses a broader range of conduct than making such a statement" under Rule 10b-5, the SEC's Section 17(a)(2) claim survives the first step of the analysis. *Farmer*, 2015 WL 5838867, at *7 (cleaned up); *see also S.E.C. v. Tambone*, 597 F.3d 436, 444 (1st Cir. 2010) ("[A]lthough [S]ection 17(a)(2) may fairly be read to cover the 'use' of an untrue statement . . . Rule 10b-5(b) is more narrowly crafted and its reach does not extend that far."). The SEC has plausibly alleged that Bowen obtained money by means of untrue or misleading statements. Specifically, the SEC alleges that Bowen "sent [the Mustang 2 Offering Materials] to prospective

investors." Compl. ¶ 19; *see also* Resp. 7 (arguing that Bowen "disseminated and used the materially false or misleading offering materials to sell the oil and gas interests"). And those materials allegedly contained material misrepresentations and omissions.

The SEC further alleges that Bowen received commissions when he successfully closed a sale and thus obtained money. Compl. ¶ 40. According to the SEC, "[b]etween January 2018 and September 2020, Baker, Bowen, and Cannon raised approximately $2,182,687 from at least 140 investors through the fraudulent . . . offer and sale of securities." *Id.* ¶ 1; *see also id.* ¶ 15 (alleging that Cannon raised $1,538,152 in connection with the Mustang 2 well). "[C]ourts allow liability under Section 17(a)(2) even where the defendant obtains money only as the indirect result of the fraud, such as through increased compensation from his or her employer." *Farmer*, 2015 WL 5838867, at *8 (citation omitted). Therefore, the SEC has plausibly alleged that Bowen obtained money by means of the alleged untrue statements in the Mustang 2 Offering Materials. *See S.E.C. v. Moleski*, No. 2:21-CV-01065-SVW-E, 2021 WL 6752254, at *3 (C.D. Cal. Oct. 21, 2021) (finding that the SEC stated a claim under Section 17(a)(2) where it alleged "that the individual Defendants received money or property from their frauds by virtue of the commissions they received from Heartland . . . .").

Accordingly, the SEC has plausibly alleged conduct that falls within the ambit of Section 17(a)(2).

### ii. Material Misrepresentation or Omission

The Court turns next to the question of whether the SEC has plausibly alleged material misstatements and omissions.[5] To be actionable, statements or omissions must be both: (1) untrue

---

[5] Bowen identifies an additional alleged misrepresentation that is not addressed below; namely, the statement that investor funds would be placed in a segregated bank account. *See* Bowen's Br. 7. However, it does not appear that the SEC attempted to tie this misrepresentation to Bowen, and the SEC does not

or misleading and (2) material. *See* 15 U.S.C. § 77q(a)(2); 17 C.F.R. § 240.10b-5(b). "[T]he standard for misrepresentation is whether the information disclosed, understood as a whole, would mislead a reasonable potential investor." *Seghers*, 298 F. App'x at 328 (citation omitted). As to materiality, "[a] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *Id.* (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002)); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (stating that materiality requires "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (citation omitted)). The Court will first consider Bowen's challenges to whether the statements and omissions were untrue or misleading and material and then will turn to whether the SEC has pleaded its claims with particularity.

First, the SEC alleges that the Mustang 2 Prospect Book misrepresented the prior wells' production history by stating that they "continued to produce at massive rates," Compl. ¶ 22, even though actual production "declined dramatically after the initial production," *id.* ¶ 23. Bowen does not contest the assertion that this statement was false, and the Court concludes that the SEC plausibly alleges that the statement was untrue. Further, the SEC plausibly alleges that the statement was material. The prior wells were in the same field as the proposed Mustang 2 well, meaning the misrepresentation "misled investors into believing that production from the Mustang 2 [well] would also be high." *Id.* ¶ 22. When making the decision to invest in a new well, a reasonable investor would consider the production history of prior wells in the same field to be important.

---

address it in its Response. *See* Compl. ¶ 24 ("***Baker*** . . . never opened a separate account for Mustang 2 investor funds." (emphasis added)). Therefore, the Court does not consider this allegation at this time.

Second, the SEC argues that the Mustang 2 Offering Materials omitted the fact that investor funds would be used to pay commissions to salespeople. *Id.* ¶ 33. Bowen challenges this allegation on the grounds that the statement was not fraudulent when made. Bowen's Br. 8. Instead, Bowen argues either that the statement was "just an unfulfilled promise on the part of Baker and Cannon," *id.* at 8, or that the Mustang 2 Offering Materials' disclosure that 15% of investor funds would go to offering expenses encompassed the use of such funds for sales commissions, Reply 4-5.

The Court finds that the SEC has plausibly alleged a material omission. Omitting the fact that investor funds would be used to pay commissions renders the statements made regarding the use of investor funds misleading because it suggests that commission payments will not come out of investor funds. This omission also is material because it "concealed Cannon's improper use of investor funds." Resp. 6. Therefore, the SEC has plausibly alleged a material omission. *See S.E.C. v. Montgomery*, No. SA-20-CA-598-FB, 2021 WL 210749, at \*4 (W.D. Tex. Jan. 20, 2021) (finding violation of Section 17(a)(2) where private placement memorandum "detailed the use of investor proceeds" but "failed to disclose that approximately one-third of investor funds would be used to pay commissions to salespeople who offered and sold the investments"); *S.E.C. v. Reynolds*, No. 1:06-CV-1801-RWS, 2010 WL 3943729, at \*1 (N.D. Ga. Oct. 5, 2010) ("Defendants also failed to disclose several material facts to investors, including . . . that investor funds were used to pay commissions to Independent Representatives[.]"); *S.E.C. v. U.S. Funding Corp.*, No. 02-2089(WJM), 2006 WL 995499, at \*4 (D.N.J. Apr. 11, 2006) (finding a material misrepresentation or omission where investment materials "did not disclose that investor funds would be used to pay . . . telemarketers' commissions").

Third, the SEC points to the omission of any reference to Bowen in the Mustang 2 Offering Materials. Compl. ¶ 31. Bowen argues that the omission was not misleading when it occurred and

that the omission is not material. Bowen's Br. 8 n.27; Reply 6. The SEC responds that the omission is misleading because it concealed the fact that Bowen previously had been sanctioned by the SEC and material because it prevented investors from discovering Bowen's previous securities violations. Compl. ¶ 31; Resp. 10. The Court concludes that the SEC has not plausibly alleged a material omission. The SEC notes that Bowen was barred from selling securities in March 2018, Compl. ¶ 42, and that the Mustang 2 offering began in April 2018, *id.* ¶ 23. But the SEC does not specify when Bowen allegedly helped prepare the Mustang 2 Offering Materials. If the SEC's theory is that Bowen failed to edit the Mustang 2 Offering Materials to include his identity, the date he reviewed the materials, rather than the date the offering began, is relevant. Further, the Court determined above that the SEC's only viable theory is that Bowen used the misstatements and omissions in the Mustang 2 Offering Materials to obtain money by soliciting investors. Presumably, the investors would be on notice of Bowen's involvement in the offering due to his solicitation. However, as discussed below, due to the lack of information about the solicitations, the Court cannot advance this line of reasoning any further. Suffice to say that, at this time, the SEC has not adequately alleged a fraud claim based on the omission of Bowen's identity and position from the Mustang 2 Offering Materials.

Although the SEC adequately alleges two material misstatements or omissions, the SEC has not pleaded its claims based on these statements with particularity. As stated above, the Court finds that the SEC has not plausibly alleged that Bowen made the statements in the Mustang 2 Offering Materials at all, much less with the particularity required by Rule 9(b). And the SEC omits critical details regarding Bowen's alleged use of such materials to solicit investors. *See, e.g.*, *Felton*, 2020 WL 7056333, at *7 ("The SEC provides no details on [defendant's] specific activities, when they may have occurred, or how any activities are tied to fraud."). The SEC alleges

14

in conclusory fashion that Bowen sent the materials to potential investors. *See, e.g.*, Compl. ¶ 19. And presumably this happened sometime between April 2018 (when the Mustang 2 offering began) and September 2018 (when Bowen left Cannon). *See id.* ¶¶ 9, 23. But the SEC omits critical information such as "who [Bowen] sold interests to, as well as when, where, and how he sold them." Reply 8.

The Court recognizes that "[w]hen the complaint details the defendants' scheme and apprises them of the basic transaction(s) upon which fraud is alleged, an enforcement action may be less specific with respect to when and where the alleged fraud occurred." *S.E.C. v. Haarman*, No. A-21-CV-00235-LY, 2022 WL 2782648, at *5 (W.D. Tex. Jan. 25, 2022) (citation omitted), *report and recommendation adopted by* 2022 WL 2763163 (W.D. Tex. Mar. 11, 2022). In this case, however, the SEC has not sufficiently apprised Bowen of the basic transactions upon which fraud is alleged. In sum, the SEC fails to provide the who, what, when, where, and how of the fraud that is required by Rule 9(b).

### iii. Scienter or Negligence

To establish a violation of Rule 10b-5(b), the SEC must show that Bowen acted with scienter. *Seghers*, 298 F. App'x at 327 (citation omitted). "Scienter is a mental state that embraces an intent to deceive, manipulate or defraud, and includes severe recklessness." *Id.* at 333 (citation omitted). Severe recklessness is:

> limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* (quoting *Fine v. Am. Solar King Corp.*, 919 F.2d 290, 296-97 (5th Cir. 1990)). "The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud." *Tuchman v. DSC Commc'ns Corp.*,

14 F.3d 1061, 1068 (5th Cir. 1994). The SEC also may plead scienter "by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Id.* (citation omitted). To establish a violation of Section 17(a)(2), the SEC need only show that Bowen acted negligently. *Seghers*, 298 F. App'x at 327 (citation omitted).

Because the SEC has provided few details on how Bowen used the misstatements and omissions discussed above to solicit investors, it is difficult to analyze scienter and negligence. As to scienter, the SEC has presented some facts supporting a motive to commit securities fraud, as Bowen received commissions on sales and determined the amount of commissions paid on each sale. Compl. ¶ 33; *see also S.E.C. v. Ramírez*, No. 15-2365 (PAD), 2018 WL 2021464, at *11 (D.P.R. Apr. 30, 2018) (citation omitted) (finding the fact that the defendant earned commissions on customer purchases, among other things, weighed in favor of an inference of scienter). But on the other hand, "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated." *Tuchman*, 14 F.3d at 1068 (citation omitted).

The Court finds that the SEC has not adequately alleged that Bowen knew or must have been aware of the danger of misleading investors. As to the first alleged misstatement, the SEC alleges that Bowen knew that actual production from the prior wells had declined because that information was contained in offering materials for a 2016 project. Compl. ¶ 23. But the SEC does not allege that Bowen reviewed or otherwise was aware of those 2016 offering materials. And the SEC's vague claim that Bowen reviewed and edited the Mustang 2 Offering Materials does not plausibly allege that Bowen ever saw the misstated production numbers. The Court finds, however, that the SEC has adequately alleged negligence with respect to the production history statement. If, as Bowen claims, "he made no substantive review of . . . the Mustang 2 Prospect Book,"

Reply 4, he was at least negligent in soliciting investors without reviewing the materials he was using to do so.

As to the second alleged misstatement, the SEC alleges that Bowen knew the payment of commissions was omitted because he was the sales manager and determined the amount of commissions paid. Compl. ¶ 33. Bowen argues that the SEC cannot predicate a fraud claim on his title or position[6] and that paying commissions as directed by one's employer does not constitute fraud. Bowen's Br. 7-8. The Court finds that scienter is lacking. To analyze this issue, the Court must separate two acts: (1) omitting the fact that commissions would be paid out of investor funds and (2) improperly paying commissions or improperly paying sales commissions that exceeded the 15% cap. For purposes of Rule 10b-5(b) or Section 17(a)(2) liability, only the former is at issue.

There are several issues with the SEC's contention that Bowen "knew, or [was] reckless in not knowing, that [the Mustang 2 Offering Materials] failed to disclose to investors the payment of sales commissions" because Bowen determined the amount of commissions paid and "prepared" the Mustang 2 Offering Materials. Compl. ¶ 33. The SEC alleges in one breath that the commissions were not disclosed but claims in the next that they exceeded the 15% cap on offering, overhead, and management expenses. *Id.* ¶ 28. Since it is unclear to the Court and to the SEC whether commissions were part of the offering, overhead, and management expenses, the Court cannot conclude that Bowen knew or was reckless in not knowing that the sales commissions were not disclosed. Further, as with the production history misrepresentation, the SEC's vague

---

[6] Although irrelevant to the analysis below, the Court rejects this argument. While other pleading defects preclude liability, the Court does not agree that the SEC attempts to establish liability based solely on Bowen's position as sales manager. The SEC factually alleges that Bowen, in his role as sales manager, "was in charge of paying commissions," Compl. ¶ 28, and "determined the amount of commission paid on each sale," *id.* ¶ 33.

allegations that Bowen reviewed and edited the Mustang 2 Offering Materials do not plausibly allege that Bowen knew the payment of commissions was omitted. For the same reasons, the Court also finds that the SEC has not plausibly alleged that Bowen was negligent in omitting the payment of commissions from the Mustang 2 Offering Materials.

Because the Court has already found that the SEC failed to state a claim with respect to the third alleged misstatement—the omission of Bowen's name and position from the Mustang 2 Offering Materials—the Court will not analyze scienter or negligence at this time. In sum, the Court finds that the SEC's Complaint fails to state a claim for violations of Rule 10b-5(b) and Section 17(a)(2).

### B. Scheme Liability

Even if Bowen did not make or use any false statements for purposes of Rule 10b-5(b) or Section 17(a)(2) liability, he may still be subject to scheme liability under Rule 10b-5(a) and (c) and Section 17(a)(1) and (3). *See, e.g.*, *Lorenzo*, 872 F.3d at 592 (collecting cases standing for the proposition that "securities-fraud allegations involving misstatements can give rise to liability under related provisions even if the conduct in question does not amount to 'making' a statement under *Janus*"). Rule 10b-5(a) and (c) and Section 17(a)(1) and (3) "prohibit, in the offer or sale of securities, the employment of any device, scheme, or artifice to defraud; and the engaging in any act, practice, or course of business that operates or would operate as a fraud or deceit on any person." *S.E.C. v. Narayan*, No. 3:16-CV-1417-M, 2017 WL 4652063, at *3 (N.D. Tex. Aug. 28, 2017). "These provisions . . . are described as creating 'scheme liability.'" *Id.* (citation omitted). Three of the four scheme liability provisions require proof of scienter, but "the language of § 17(a)" does not require scienter "under . . . § 17(a)(3)." *Aaron v. S.E.C.*, 446 U.S. 680, 697 (1980).

Here, the SEC arguably alleges a basis for scheme liability. First, the SEC alleges that Bowen misused investor funds by paying commissions to salespeople. Compl. ¶ 28. Those commission payments either were not disclosed or exceeded the 15% cap on offering, overhead, and management expenses. *Id.*; *see, e.g.*, *Montgomery*, 2021 WL 210749, at *4 (finding basis for scheme liability where the defendant "misused investor funds by using offering proceeds contrary to disclosures about how such proceeds would be used"). Moreover, the salespeople receiving commissions, including Bowen himself, allegedly were not registered as brokers. Compl. ¶ 40. Second, the SEC alleges that Bowen disseminated the misleading and untrue Mustang 2 Offering Materials to prospective investors. *Id.* ¶ 19. "Those who disseminate false statements with intent to defraud are primarily liable under Rules 10b-5(a) and (c), § 10(b), and § 17(a)(1), even if they are secondarily liable under Rule 10b-5(b)." *Lorenzo*, 139 S. Ct. at 1104; *see also Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-CV-00194-N, 2023 WL 5489054, at *9 (N.D. Tex. Aug. 24, 2023) ("Dissemination is a form of conduct, and 'the scheme subsections can cover conduct that involves a misstatement even if the defendant was not the maker of it.'" (citation omitted)).

But, as Bowen notes, the SEC merely alleges that Bowen engaged in a fraudulent scheme, made a fraudulent misrepresentation, or engaged in a fraudulent transaction or course of business "[b]y engaging in the conduct described above." Bowen's Br. 4-5 (quoting Compl. ¶¶ 49, 53). Bowen himself fails to address scheme liability in his briefing on the Motion, focusing instead on whether he made any misstatements or omissions. *See* Reply 1 ("The SEC's fraud claims are all based on statements contained in (or omissions that allegedly should have been contained in) the Mustang 2 [Offering Materials] . . . ."); *Berry*, 580 F. Supp. 2d at 923 ("[Defendant] fails to differentiate between these different bases for imposing liability under Rule 10b-5 when she argues that she did not make any false statements. To be liable under Rule 10b-5 . . . [s]he need only have

made an intentionally deceptive contribution to an overall fraudulent scheme."). Because the parties neither meaningfully address scheme liability nor cite any case law supporting their respective positions, the Court will not attempt to guess at what their arguments might be. Instead, the Court will address this issue, if necessary, after the SEC amends its Complaint.

### IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant Michael Bowen's Partial Motion to Dismiss [ECF No. 15]. Because the SEC has requested leave to amend its Complaint, *see* Resp. 10, and given the Federal Rules of Civil Procedure's liberal policy of allowing amendments to pleadings, the Court **GRANTS** the SEC leave to amend its Complaint. The SEC must file an amended complaint by October 12, 2023. If an amended complaint is not filed within such time, the SEC's claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED September 21, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**